IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § § | |
| Plaintiff, | § § | Civil Action No. 3:11-cv-882-O |
| v. | § § | |
| DAVID RONALD ALLEN et al., | § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are United States Securities and Exchange Commission's Motion for an

Order to Show Cause Why Defendant Ilya Drapkin ("Drapkin") Should Not Be Held in Contempt

("Motion for an Order to Show Cause") (ECF No. 293), filed October 4, 2013; Drapkin's Response

to Motion for an Order to Show Cause (ECF No. 297), filed October 21, 2013; Drapkin's

Memorandum of Law in Opposition to Motion for an Order to Show Cause (ECF No. 298), filed

October 21, 2013; and Memorandum of Law in Reply to Drapkin's Opposition to Motion for an

Order to Show Cause (ECF No. 301), filed October 28, 2013. For the reasons below, the Court finds

that Drapkin is in contempt of the Court's final judgment entered against him.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Plaintiff the Securities and Exchange Commission ("the SEC") commenced this action

alleging that China Voice Holding Corp. ("China Voice"), certain China Voice executives, and

various related entities made false and misleading public statements about the financial condition

of China Voice. *See* 2d Am. Compl. 2-3, ECF No. 75. The SEC also alleged that Drapkin, a China

Voice shareholder, perpetuated the fraudulent scheme through stock promotion campaigns. *Id.* at 17-

20. On, April 28, 2011, the Court entered an order placing a freeze on certain MG TK Corp. accounts

("the Accounts") at JP Morgan Chase bank. *See* Mot. Order Show Cause Ex. 13 (Freeze order), 1-17,

ECF No. 293-7. Drapkin is the "director, officer, and/or managing member of MG TK Corp." 2d

Am. Compl. 2-3, ECF No. 75; Def.'s Answer 2d Am. Compl. ¶ 10, ECF No. 103.

    On April 29, 2011, before the bank froze the Accounts, Drapkin's wife removed

$502,806.55 from the Accounts. *See* Ex Parte Mot. Seal Writ Execution Ex. 3 (Accounts wires &

withdrawals), ECF No. 286-5.  Drapkin previously testified that his wife does not transfer money

from the Accounts unless he directs her to do so. *Id.* Ex. 14 (Drapkin tr.), 3-4 , ECF No. 293-8.

    Thereafter, Drapkin consented to the entry of a judgment permanently restraining and

enjoining him from violating enumerated securities laws (ECF No. 132). Drapkin was also ordered

to pay disgorgement of ill-gotten gains, prejudgment interest thereon, and a civil penalty. On July

6, 2012, the Court entered final judgment against Drapkin, which was corrected *nunc pro tunc* on

October 11, 2012 (ECF Nos. 238 & 243). After the Court entered final judgment, Drapkin contacted

the Dallas Art Gallery and arranged the sale of more than $700,000 worth of artwork. *See* Ex Parte

Mot. Seal Writ Execution Exs. 6-10 (Artwork documentation), ECF No. 286-5. To date, Drapkin

has failed to make any payments toward the disgorgement orders.

    The SEC now asks the Court to hold Drapkin in civil contempt for failure to pay

disgorgement and interest as required by the Court in its final judgment. *See* Reply Opp'n Mot.

Order Show Cause, ECF No. 301. Drapkin filed his response in opposition on October 21, 2013, and

the SEC filed its reply on October 28, 2013. Accordingly, this matter has been fully briefed and is

ripe for determination.

## II.    LEGAL STANDARD

Courts have the inherent power to enforce compliance with their orders through civil contempt. *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009) (citing *Spallone v. United States*, 493 U.S. 265, 276 (1990); *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir.1990)). Civil contempt "is remedial, and for the benefit of the complainant," while criminal contempt is "punitive, to vindicate the authority of the court." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827-28 (1994) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911)) (internal quotation marks omitted).

Civil contempt may be imposed following notice and an opportunity to be heard and "[n]either a jury trial nor proof beyond a reasonable doubt is required."[1] *Id.* Sanctions in civil contempt proceedings may be used for two purposes: (1) to coerce the defendant into compliance and (2) to compensate the complainant for losses suffered. *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303 (1947) (citing *Gompers*, 221 U.S. at 448-49).

"In a civil contempt proceeding, the movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*,

---

[1] Here, Drapkin did not request an evidentiary hearing and the Court sees no need to conduct one absent a request because Drapkin failed to raise a genuine issue of material fact on his present inability to comply with the Court's order. *See Tranzact Techs., Inc. v.1Source Worldsite*, 406 F.3d 851, 855-56 (7th Cir. 2005) (explaining both contemnor and complainant are entitled to evidentiary hearing on genuine issues of material fact); *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002) (stating evidentiary hearing "would have been a waste of time" absent genuine issue of material fact); *In re Grand Jury Matter*, 906 F.2d 78, 85 (3d Cir. 1990) ("We believe that an approach which limits an alleged contemnor's right to call witnesses to those instances where there is a genuine factual dispute or where testimony is useful to bring to the court's attention relevant evidence not already developed in the record is the correct one."); *United States v. Melick*, ___F. Supp. 2d___, 2011 WL 10934145, at *5 n.7 (D.N.H. Oct. 6, 2011) ("In civil contempt proceedings, a party has a right to an evidentiary hearing only if, and to the extent that, genuine issues of material fact exists.").

359 F.3d 727, 731 (5th Cir. 2004) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000)). The contemptuous conduct does not need to be willful as long as the contemnor actually failed to comply with the order. *Am. Airlines, Inc.*, 228 F.3d at 578 (citing *N.L.R.B. v. Trailways, Inc.*, 729 F.2d 1013, 1017 (5th Cir. 1984)).

Once a violation is demonstrated, the burden falls on the contemnor "to show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (citing *United States Steel Corp. v. United Mine Workers of Am.*, *Dist. 20*, 598 F.2d 363, 368 (5th Cir. 1979);  *La. Educ. Ass'n v. Richland Parish Sch. Bd.*, 421 F. Supp. 973, 977 (W.D. La. 1976), *aff'd* 585 F.2d 518 (5th Cir.1977)).

A defendant may also assert a present inability to comply with the order as a defense to civil contempt. *United States v. Rylander*, 460 U.S. 752, 757 (1983) (citing *Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948); *Oriel v. Russell*, 278 U.S. 358, 366 (1929)). The defendant has the burden of proving this defense and must demonstrate that compliance with the order at issue is now factually impossible. *Id.* (citing *McPhaul v. United States*, 364 U.S. 372, 379 (1960);  *United States v. Fleischman*, 339 U.S. 349, 362-363 (1950); *Maggio*, 333 U.S. at 75-76; *Oriel*, 278 U.S. at 366). Defendants need only prove their inability to pay by a preponderance of the evidence, but courts are not required "to accept . . . unsubstantiated, self-serving testimony as true." *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993).

## III.    ANALYSIS

The SEC contends Drapkin is in violation of the Court's final judgment, which required Drapkin to pay disgorgement and interest. *See generally* Mem. Law Supp. Mot. Order Show Cause,

ECF No. 293-1; *see also* Corrected Final J., ECF No. 243 (requiring Drapkin to pay disgorgement within fourteen business days of final judgment). To date, Drapkin has not made a payment toward the disgorgement order. Drapkin counters that he should not be held in contempt because both the Court's final judgment and the SEC's motion are vague and ambiguous, he has no assets subject to execution, and he has made all reasonable efforts to pay the final judgment. *See generally* Def.'s Mem. Law Opp'n Mot. Order Show Cause, ECF No. 298. The Court will first determine whether Drapkin is in violation of the final judgment before evaluating Drapkin's defenses.

### A.     Did the SEC Meet its Burden of Showing Drapkin Violated the Final Judgment?

The SEC has the burden to show, by clear and convincing evidence, that: (1) an order was in effect, (2) the order required specific conduct by Drapkin, and (3) Drapkin failed to comply with the order. *See, e.g.*, *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004). Here, the SEC relies on the Court's final judgment, which required Drapkin to pay certain disgorgement amounts within fourteen business days of the final judgment. *See* Mem. Law Supp. Mot. Order Show Cause 4-5, ECF No. 293-1; Corrected Final J., ECF No. 243. Thus, the SEC has met the first two elements. Lastly, to date, Drapkin has not made any disgorgement payments. Therefore, the Court finds that the SEC has met its burden of showing Drapkin violated the Court's final judgment.

In response to the SEC's reliance on the final judgment, Drapkin counters that the final judgment is too vague to be enforced.[2] Specifically, Drapkin contends:

---

[2] Drapkin also contends that the SEC's motion is vague and ambiguous because "it is unclear whether the SEC seeks to hold Defendant in contempt for the funds transferred allegedly in violation of the TRO, or for the payment of the Final Judgment . . . [and to] the extent the Contempt Motion seeks the repayment of funds transferred allegedly in violation of the TRO, it is a criminal contempt proceeding and fails for lack of requisite notice, as well as the lack of a right to a jury trial." As noted by the SEC in its reply,

> the final judgment is vague, ambiguous and unable to be enforced by
> contempt because it contains multiple options for payment, including
> certain obligations of a non-volitional nature and others of a
> volitional nature, and the lack of availability of such alleged profits
> or the overwhelming inability to pay such amounts in such a short
> time frame, as well as the volitional nature of the manner of
> enforcement of the Final Judgment to be utilized by the SEC.

Def.'s Mem. Law Opp'n Mot. Order Show Cause 7, ECF No. 298. A court may only hold an

individual in contempt of an order if the order contains specific and definite language requiring the

individual to perform or refrain from performing an act. *Martin v. Trinity Indus., Inc.*, 959 F.2d 45,

47 (5th Cir. 1992) (citing *Baddock v. Villard*, 606 F.2d 592, 593 (5th Cir.1979)). "The judicial

contempt power is a potent weapon which should not be used if the court's order upon which the

contempt was founded is vague or ambiguous." *Id.* (quoting *Baddock*, 606 F.2d at 593) (internal

quotation marks omitted).  Drapkin does not cite any authority for the proposition that a judgment

which allows multiple forms of payment is impermissibly vague, and the Court does not find any.[3]

---

the SEC seeks to hold Drapkin in contempt of the final judgment and only offers the transfers as evidence
of Drapkin's ability to pay. *See* Mem. Law Reply Def.'s Opp'n 1 n.1, ECF No. 301. Moreover, had the SEC
moved for a finding of contempt based on the transfers and the Court's freeze order, this would also be a
request for civil, rather than criminal, contempt. *See, e.g.*, *In re Bradley*, 588 F.3d 254, 265 (5th Cir. 2009)
(discussing inherent power of courts to enforce compliance with their orders through civil contempt).

[3] The final judgment provides:

> Defendants may transmit payment electronically to the Commission, which
> will provide detailed ACH transfer/Fedwire instructions upon request.
> Payment may also be made directly from a bank account or by credit or
> debit card via Pay.gov through the SEC website at
> http://www.sec.gov/about/offices/ofm.htm. Defendants may also pay by
> certified check, bank cashier's check, or United States postal money order
> payable to the Securities and Exchange Commission, which shall be
> delivered or mailed to:
>
> > Enterprise Services Center
> > Accounts Receivable Branch
> > 6500 South MacArthur Boulevard
> > Oklahoma, City, OK 73169

The final judgment directed Drapkin to satisfy his disgorgement obligations by paying stated amounts to certain entities within a specified time. *See* Corrected Final J. 3-5, ECF No. 243 ("Defendants shall satisfy this obligation by paying $493,606 within fourteen business days after entry of this Final Judgment to the Clerk of the Court . . . . Defendants shall satisfy this obligation by paying $5,299,124 to the Securities and Exchange Commission within fourteen business days after entry of this Final Judgment . . . . Relief Defendant and Defendant Drapkin shall satisfy this obligation by paying $74,270 within fourteen business days after entry of this Final Judgment to the Clerk of the Court . . . ."). The final judgment also provided that the SEC "may enforce the Court's judgment for disgorgement and prejudgment interest by moving for civil contempt (and/or through other collections procedures authorized by law) at any time after 14 days following entry of this Final Judgment." *Id.* at 5.

"Defendant's misapprehension of the requirements and enforceability of the Final Judgment" has no legal import because "[t]he absence of wilfulness does not relieve from civil contempt." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187 (1949); *see also Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987) (citing *Jim Walter Resources v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980)) ( "Intent is not an issue in civil contempt proceedings; rather, the question is whether the alleged contemnors have complied with the court's order."). Notably, Drapkin does not contend he lacked knowledge of the order; instead, Drapkin insists he misunderstood its requirements.[4] *See Whitfield*, 832 F.2d at 913 ("A party may be held in contempt

---

Corrected Final J., ECF No. 243.

[4] In his declaration, Drapkin attest: "I did not know that the judgment by the SEC was anything more than a regular judgment. I thought the sections talking about payment meant only if I had those amounts in my possession." Def.'s Mem. Law Opp'n Mot. Order Show Cause (Drapkin decl.), 3, ¶ 11, ECF No. 298-1.

if he violates a definite and specific court order requiring him to perform or refrain from performing a particular act or acts *with knowledge of that order*." (emphasis added)).  "Finally, the proper remedy for vagueness is a motion for modification, clarification, or construction, and vagueness may not be argued successfully as a defense to contempt without prior efforts to obtain clarification." *Lelsz v. Kavanagh*, 673 F. Supp. 828, 840 (N.D. Tex. 1987) (Sanders, C.J.) (citing *McComb*, 336 U.S. at 191).  Accordingly, the Court rejects Drapkin's attack on the final judgment and finds the SEC met its burden of proving non-compliance.

### B.    Did Drapkin Meet His Burden of Showing Present Inability to Pay?

Drapkin has the burden of proving that compliance with the order is factually impossible by a preponderance of the evidence. *See United States v. Rylander*, 460 U.S. 752, 757 (1983); *Maggio v. Zeitz*, 333 U.S. 56, 75-76 (1948); *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993). Once the alleged contemnor is found to have been in possession of funds that could be used to satisfy the judgment, courts presume continuing possession. *Cf. United States v. Rylander*, 460 U.S. 752, 761 (1983). The "mere assertion of 'present inability' is insufficient to avoid a civil contempt finding." *Chi. Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000). Rather, the alleged contemnor must: (1) explain categorically and in detail why he is unable to pay and (2) establish that his inability to pay was not self-imposed. *Id.* (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999); *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir. 1991)); *see also SEC v. AMX, Int'l, Inc.*, 872 F. Supp. 1544, 1542 (N.D. Tex. 1994) (Sanders, C.J.) (citing *SEC v. Thomas James Assocs., Inc.*, 738 F.Supp. 88, 95 (W.D.N.Y. 1990)) ("A securities violator may not avoid his responsibility to turn over his ill-gotten gains by claiming

8

that he is no longer in possession of the funds due to subsequent unsuccessful investments or other types of discretionary spending.").

Drapkin attests, "[e]xcept for my house and furniture, I do not own anything else. I only have one bank account, my checking account at Bank of America." Def.'s Mem. Law Opp'n Mot. Order Show Cause (Drapkin decl.), 3, ¶ 11, ECF No. 298-1. The SEC points to three sources to demonstrate Drapkin's ability to pay: (1) the more than $500,000 transferred from the Accounts; (2) the equity in the Drapkins' home; and (3) the more than $700,000 received from the Dallas Art Gallery. *See generally* Mem. Law Supp. Mot. Order Show Cause 4-5, ECF No. 293-1. The Court will address each potential source in turn.

        1.     <u>Transfers from the Accounts</u>

A defendant who asserts a present inability to pay but who transferred assets in anticipation of the judgment against him may be held in contempt of the court's final judgment and "may purge his contempt by making good faith reasonable efforts to retrieve his assets and apply them toward the Final Judgment." *SEC v. Solow*, 682 F. Supp. 2d 1312, 1328 (S.D. Fla. 2010) (citing *In re Lawrence*, 279 F.3d 1294 (11th Cir. 2002)). Defendant David Ronald Allen testified that Drapkin informed Allen of the instant suit on the evening of April 28, 2011. *See* Ex Parte Mot. Seal Writ Execution Ex. 1 (Allen dep.), 3, ECF No. 286-3. On April 29, 2011, after the Court entered its freeze order, Drapkin's wife transferred more than $500,000 from the Accounts. *See* Mot. Order Show Cause Ex. 13 (Freeze order), 1-17, ECF No. 293-7; Ex Parte Mot. Seal Writ Execution Ex. 3 (Accounts wires & withdrawals), ECF No. 286-5. Drapkin previously testified that his wife does not transfer money from the Accounts unless he directs her to do so. Ex Parte Mot. Seal Writ Execution Ex. 14 (Drapkin tr.), 3-4 , ECF No. 293-8.

9

Drapkin says he used these funds "to pay a third party debt, to pay off a second mortgage on Defendant's homestead, and to pay Defendant's attorneys in the underlying action, as well as Defendant's family's living expenses." Def.'s Mem. Law Opp'n Mot. Order Show Cause 15, ¶ 21, ECF No. 298. Drapkin further contends such use is "proof that Defendant no longer has access to such funds." *Id*; *see also* Def.'s Mem. Law Opp'n Mot. Order Show  Cause (Drapkin decl.), 2, ¶ 8, ECF No. 298-1 ("The money I repaid to Russian Regional Development in 2011 . . . was for part of the debt I owed . . . . It is not available to me in any way.").  Drapkin, however, has provided no evidence to substantiate his claim that he no longer has access to such funds. "A mere claim of poverty—wholly unrealistic on its face here—without adequate proof is not sufficient to satisfy his burden." *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000) (citing *Loftus v. Se. Pa. Trans. Auth.*, 8 F. Supp. 2d 464, 467 (E.D. Pa. 1998); *SEC v. Kenton Capital, Ltd.*, 983 F. Supp. 13, 15 (D.D.C. 1997)). Accordingly, the Court finds that Drapkin has failed to carry his burden to demonstrate present inability to pay with regard to the more than $500,000 withdrawn and wired from the Accounts.

2.    Equity in the Drapkins' Home

Drapkin contends that his house is exempt from the disgorgement order under Texas homestead law and, thus, should not be considered when evaluating his ability to pay. Def.'s Mem. Law Opp'n Mot. Order Show Cause 8-12, ECF No. 298. Specifically, Drapkin questions whether a disgorgement order is a "debt" under the Federal Debt Collection Procedures Act and thereby subject to state property exemptions. *Id.* This exact argument, however, was rejected by the United States Court of Appeals for the Fifth Circuit. *See SEC v. Huffman*, 996 F.2d 800, 802-803 (5th Cir. 1993) (holding disgorgement is not a debt under Federal Debt Collection Procedures Act); *see also*

*SEC v. AMX Int'l, Inc.*, 7 F.3d 71, 74-76 (5th Cir. 1993) (concluding consent judgment did not transform disgorgement obligation into debt and, therefore, court may consider homestead in determining ability to pay). Accordingly, the Court may consider Drapkin's homestead in evaluating his ability to pay the final judgment. *See AMX Int'l, Inc.*, 7 F.3d at 76 (explaining district court may, but is not required to, subject home to disgorgement order).

The SEC asserts that it "is aware that Drapkin possesses at least $700,000 in equity in his home." *See* Mem. Law Supp. Mot. Order Show Cause 5, ECF No. 293-1. Drapkin contends that $250,000 represents "the balance of his community property equity interest in the homestead." Def.'s Mem. Law Opp'n Mot. Order Show Cause 16, ¶ 25, ECF No. 298. Presumably, therefore, Drapkin concedes that he and his wife have at least $500,000 equity in their home. The SEC has previously demonstrated to the Court that Drapkin's wife wired $228,540.75 to pay off a second mortgage on the Drapkins' home. *See* Ex Parte Mot. Seal Writ Execution Ex. 5 (Mortgage payment), ECF No. 286-7.

The Court takes judicial notice of the county records detailing the 2013 appraisal of the Drapkins' home and the release of two liens thereon. *See* Collin County Central Appraisal District, http://www.collincad.org/propertysearch?prop=1921068&year=2014 (last visited Jan. 10, 2014) (listing 2013 appraisal at $1,093,314.00); Collin County Records, Deed Search, http://countyclerkrecords.co.collin.tx.us/webinquiry/results.aspx (last visited Jan. 10, 2014) (showing (1) outstanding $625,000 deed of trust granted to Legacy Bank of Texas on November 30, 2001; (2) release of $646,650 lien by Executive Home Mortgage Co. on January 14, 2002; and (3) release of $250,000 lien by Citibank on June 1, 2011); *see also Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 758 (N.D. Tex. 2012) (Lynn, J.) (stating county appraisal is public document

11

of which court may take judicial notice); *DTND Sierra Invs. LLC v. Bank of N.Y. Mellon Trust Co., NA.*, ___F. Supp. 2d___, 2013 WL 3894946, at *3 (W.D. Tex. 2013) ("The Court also takes judicial notice of the Deed of Trust and the assignment document because they have been recorded and are therefore matters of public record."). The Court therefore determines that the Drapkins have at least $500,000 equity in their home.

In *AMX International*, the Fifth Circuit remanded the case to the district court for the district court to determine, in its discretion, whether the contemnor's home, which he jointly owned with his wife, should be subjected to the disgorgement order. *See SEC v. AMX, Int'l, Inc.*, 872 F. Supp. 1541, 1542 (N.D. Tex. 1994) (Sanders, C.J.). The district court then accepted the magistrate judge's recommendation that the contemnor's home be considered by the court in determining present ability to pay. *See id.* at 1545 ("By selling his home or obtaining a loan on his home [the contemnor] could begin to pay the equitable remedy ordered by the Court in this case."). Here, the Court finds that Drapkin's extensive attempts to avoid paying the final judgment, concurrent with his urgency to settle other debts and expenses, warrants consideration of the equity in Drapkin's home.

3.      Proceeds from the Art Gallery

Drapkin arranged for the sale of more than $700,000 worth of artwork, so that he and his wife "could pay off some of our debts and also cover the living expenses for our family." *See* Ex Parte Mot. Seal Writ Execution Exs. 6-10 (Artwork documentation), ECF No. 286-5; Def.'s Mem. Law Opp'n Mot. Order Show Cause (Drapkin decl.), 3, ¶ 11, ECF No. 298-1. The artwork presents two distinct issues: (1) whether the artwork, and thereby the proceeds,[5] are the separate property of

---

[5] If the Court finds that the artwork was community property, the proceeds thereof are also community property. 39 Tex. Jur. 3d Family Law § 153.

Drapkin's wife; and (2) if the artwork was not separate property, whether Drapkin adequately accounted for the proceeds and established that his present lack of access to the funds was not self-imposed.

> a.      Was the Artwork the Separate Property of Drapkin's Wife?

Drapkin states he and his wife did not believe their course of conduct to be wrongful because Drapkin thought the artwork was his wife's separate property. Def.'s Mem. Law Opp'n Mot. Order Show Cause (Drapkin decl.), 3, ¶ 10, ECF No. 298-1. Drapkin offers two reasons for his belief that the artwork was his wife's separate property: (1) a separate property agreement between Drapkin and his wife and (2) Drapkin's intent to gift the artwork to his wife.

In Texas, property acquired by either spouse during their marriage is presumed to be community property. Tex. Fam. Code Ann. § 3.003(a); *see also McKinley v. McKinley*, 496 S.W.2d 540, 543 (Tex. 1973) (citing *Tarver v. Tarver*, 394 S.W.2d 780 (Tex. 1965)). To rebut the community property presumption, the proponent must present clear and convincing evidence that the property is the separate property of one spouse. Tex. Fam. Code Ann. § 3.003(b); *see McKinley*, 496 S.W.2d at 543 (citing *Tarver*, 394 S.W.2d at 780; *Wilson v. Wilson*, 201 S.W.2d 226 (Tex. 1947); *Chapman v. Allen*, 15 Tex. 278, 283 (1885)). "'Clear and convincing' evidence means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing Tex. Fam. Code § 101.007; *In re J.F.C.*, 96 S.W.3d 256, 264 (Tex. 2002); *Slaton v. Slaton*, 987 S.W.2d 180, 182 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

In Texas, spouses may agree to partition or exchange their community property into the

13

separate property of one spouse. Tex. Const. art. 16, § 15. Drapkin and his wife entered into a separate property agreement in 1995, which did not address the Drapkins' artwork. Def.'s Mem. Law Opp'n Mot. Order Show Cause (Separate property agreement), ECF No. 298-1. Drapkin, however, believed he "could add property to the separate property agreement at any time by writing it on the exhibit." *Id.* at 2, ¶ 4. Drapkin added the following notations to the exhibit attached to the separate property agreement:



EXHIBIT "B"

Separate Property of FAINA DRAPKIN

1. Life insurance policy issued by New York Life Insurance on the life of FAINA DRAPKIN, policy #62566766.

2. Life insurance policy issued by Security Mutual Life of New York on the life of FAINA DRAPKIN, policy #1058059.

3. Life insurance policy issued by Security Mutual Life of New York on the life of FAINA DRAPKIN, policy #1099048.

4. One-half (1/2) community property interest in and to the two percent (2%) general partner interest of ILYA DRAPKIN in THE DRAPKIN FAMILY LIMITED PARTNERSHIP, LTD.

5. all art. Art work and antiques Punchsed befo 1999. ID 1.1.2000

6. all art. Art work and antiques puypchased between 1999 - 2004 ID 1.1 2005

7. all art Art work and antiques puyphased between 2005 - 2009 1.1. 2010. ID

*Id.* (Separate property agreement), 10, ECF No. 298-1.

Section 4.104 of the Texas Family Code, which became effective in 1997, provides that a partition or exchange agreement must be in writing and signed by both parties. Tex. Fam. Code Ann. § 4.104; *see also* Tex. Fam. Code Ann. § 4.102. Drapkin dated his handwritten additions to the 1995 separate property agreement January 1, 2000; January 1, 2005; and January 1, 2010. *Id.* (Separate property agreement), 10, ECF No. 298-1. Drapkin also initialed each addition. *Id.* Drapkin's wife, however, did not sign the handwritten additions. Therefore, under Texas law, Drapkin's handwritten additions to the 1995 separate property agreement fail to constitute a valid partition or exchange agreement. *See Pankhurst v. Weitinger & Tucker*, 850 S.W.2d 726, 730 (Tex. App.—Corpus Christi 1993, writ denied) (concluding husband's assignment of one-half community interest in legal malpractice claim to wife did not constitute partition or exchange agreement because wife did not sign the assignment).

Nevertheless, the Court must determine whether Drapkin gifted his community interest in the artwork to his wife. *Id.* To further support his belief that the artwork constituted his wife's separate property, Drapkin attests,

> My wife and I began investing in artwork in the 1990's. We always intended that each piece of artwork we purchased would be her separate property. I always gave her the artwork as gifts . . . . I always thought the artwork would be for her retirement. I purchased the artwork at a time when I was successful in business from SMI Chips and other investments.

*Id.* (Drapkin decl.), 2, ¶ 5, ECF No. 298-1. A spouse may gift their one-half community interest in property to the other spouse in order to transform the community property into the separate property of the recipient. *See Pankhurst*, 850 S.W.2d at 730 (citing Tex. Fam. Code Ann. § 5.01(a)(2)

15

(Vernon 1993); *Hilley v. Hilley*, S.W.2d 565, 568 (Tex. 1961)). "A gift is a transfer of property made voluntarily and gratuitously." *See id.* (citing *Hilley*, S.W.2d at 568). The elements of a gift are: (1) intent to make a gift, (2) delivery of the property, and (3) acceptance of the property. *Id.* (citing *Grimsley v. Grimsley*, 632 S.W.2d 174, 177 (Tex. App.—Corpus Christi 1982, no writ)).  "Lack of consideration is an essential characteristic of a gift such that an exchange of consideration precludes a gift." *Id.*

Here, Drapkin's evidence that he gifted the artwork to his wife consists of the invalid additions to the 1995 separate property agreement and his affidavit. First, the Court finds that the *quid pro quo* exchange of the Drapkins' property in the 1995 agreement undercuts donative intent. *Cf. id.* (finding "donative intent based upon . . . use of the language 'token gift of my love and esteem'"). Moreover, Drapkin makes no attempt to substantiate the handwritten additions, but merely attests, "I added the artwork to the separate property agreement in my own handwriting." *Id.* (Drapkin decl.), 2, ¶ 5, ECF No. 298-1.  From this, the Court cannot conclude when the additions were made, and the Court questions whether the additions were contemporaneous to the dates provided therein.

Next, Drapkin offers his affidavit as proof that he gifted the artwork. Courts are not required "to accept . . . unsubstantiated, self-serving testimony as true." *SEC v. Huffman*, 996 F.2d 800, 803 (5th Cir. 1993). Drapkin attests that he intended the artwork to be the separate property of his wife, but he used $300,000 of the proceeds to partially pay a debt he owes to a man in Russia. *Id.* at 2, ¶ 7, 8. Thus, from Drapkin's perspective, the artwork and its proceeds are the separate property of his wife when it pertains to the SEC but community property when it relates to his other creditors. *Id.* at 2, ¶ 7 ("[T]hese creditors expect me to repay them and some are threatening me for repayment.").

16

Drapkin's own use of the proceeds belies his self-serving assertion that he gifted his interest in the artwork to his wife. Accordingly, the Court finds that Drapkin has failed to present clear and convincing evidence to rebut the presumption that the artwork is community property.

a.    *Did Drapkin Adequately Account for the Proceeds and Establish That His Inability to Pay Was Not Self-Imposed?*

Once the alleged contemnor is found to have been in possession of funds that could be used to satisfy the judgment, courts presume continuing possession. *Cf. United States v. Rylander*, 460 U.S. 752, 761 (1983). Here, having found that the artwork proceeds could have been used to satisfy the final judgment, the Court must now discuss whether Drapkin: (1) explained categorically and in detail why he cannot now use the funds and (2) established that his present inability to use the funds was not self-imposed. *See  Chi. Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000) (citing *F.T.C. v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999); *Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir. 1992); *In re Power Recovery Sys., Inc.*, 950 F.2d 798, 803 (1st Cir. 1991)).

The burden is on Drapkin to show inability to comply with the final judgment. *United States v. Rylander*, 460 U.S. 752, 757 (1983). In his response, Drapkin states he used the artwork proceeds for "the repayment of a legitimate third party debt, the investment in a home for [his] son, and the use for living expenses." Def.'s Mem. Law Opp'n Mot. Order Show Cause 14, ¶ 20, ECF No. 298. Drapkin claims to have repaid creditors in Russia for debts arising from previous business ventures, and conveniently, "[a]ll of these business dealings were done on a handshake, as that was normal practice in Russia and for me."  *Id.* at 2, ¶ 3. "A mere claim of poverty—wholly unrealistic on its face here—without adequate proof is not sufficient to satisfy his burden." *SEC v. Bilzerian*, 112 F.

17

Supp. 2d 12, 16 (D.D.C. 2000) (citing *Loftus v. Se. Pa. Trans. Auth.*, 8 F. Supp. 2d 464, 467 (E.D. Pa. 1998); *SEC v. Kenton Capital, Ltd.*, 983 F. Supp. 13, 15 (D.D.C. 1997)). Drapkin's conclusory statement that he no longer has the funds falls far short of establishing his inability to pay "categorically and in detail." *See Chi. Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 506 (8th Cir. 2000). Additionally, Drapkin's statement clearly demonstrates that he "does not have access to such funds and cannot access such funds to pay the Final Judgment" because *Drapkin* gave the money to others. *Id.*

"With full knowledge of the existence of the Court's disgorgement judgment, [Drapkin] voluntarily chose to transfer his assets . . . If he cannot convince the [recipients] to return his assets to him, it is a problem of his own making." *Bilzerian*, 112 F. Supp. 2d at 28 (citing *United States v. Lay*, 779 F.2d 319, 320 (6th Cir. 1985); *Piambino v. Bestline Products, Inc.*, 645 F. Supp. 1210, 1215 (S.D. Fla.1986)). "To allow [Drapkin] to avoid the Court's disgorgement Orders through his contumacious conduct would render both the Court's Orders and the SEC's enforcement power meaningless." *Id.* (citing *SEC v. AMX Int'l, Inc.*, 872 F. Supp. 1541, 1545 (N.D. Tex.1994)). Accordingly, the Court finds that Drapkin has failed to meet his burden to show inability to pay in regard to the artwork proceeds.

**B.    Has Drapkin Demonstrated Mitigating Circumstances or Substantial Compliance?**

Once a violation is demonstrated, the burden falls on the contemnor "to show either mitigating circumstances that might cause the district court to withhold the exercise of its contempt power, or substantial compliance with the consent order." *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987) (citing *United States Steel Corp. v. United Mine Workers of Am., Dist. 20*, 598

F.2d 363, 368 (5th Cir. 1979); *La. Educ. Ass'n v. Richland Parish Sch. Bd.*, 421 F. Supp. 973, 977

(W.D. La. 1976), *aff'd* 585 F.2d 518 (5th Cir.1977)). Drapkin claims that in light of his current

status, he has "gone above and beyond in his offers to pay the Final Judgment." Def.'s Mem. Law

Opp'n Mot. Order Show Cause 15, ¶ 22, ECF No. 298. Drapkin states he offered the SEC a

"replacement lien" on his homestead in the amount of the funds withdrawn from the Accounts that

were used to pay off the second mortgage on his house. *Id.* at 15, ¶ 23.  Additionally,

> [Drapkin's] wife has agreed to waive her interest in and to the $1.25
> million of artwork seized by the U.S. Marshals pursuant to Plaintiff's
> Writ of Execution and to allow Plaintiff to retain 100% of the
> proceeds of such sales. Defendant has even offered to facilitate the
> marketing and sale of such artwork to achieve the highest value at
> auction.

*Id.* at 15-16, ¶ 24.  And lastly, Drapkin "offered an additional lien of $250,000 on his homestead

representing the balance of his community property equity interest in the homestead to pay further

on the Final Judgment." *Id.* at 16, ¶ 25.

Drapkin's purported "reasonable efforts" stand in stark contrast to the following: Drapkin

(1) has made zero disgorgement payments; (2) has used more than $1 million to pay other creditors,

purchase a home for his son, and cover unidentified living expenses; and (3) has made no efforts to

retrieve such funds. "Instead of making a good faith effort to satisfy the disgorgement, his actions,

instead, constitute all reasonable efforts to frustrate the disgorgement." *SEC v. Solow*, 682 F. Supp.

2d 1312, 1334 (S.D. Fla. 2010). Accordingly, the Court finds Drapkin failed to demonstrate

circumstances that would warrant the Court to withhold its contempt power.

## IV.    CONCLUSION

Drapkin contends to have no funds with which to pay the Court's final judgment but has

utterly failed to account for the more than $1 million in funds he claims to have used to pay other creditors and personal expenses. Moreover, Drapkin has significant equity in his home, which may be used toward the disgorgement order. In light of the foregoing, the Court finds Drapkin has failed to demonstrate present inability to pay even a portion of the Court's final judgment.

**IT IS THEREFORE ORDERED** that Defendant Ilya Drapkin is in contempt of court. **IT IS FURTHER ORDERED** that Drapkin may purge himself of contempt by paying **$500,000** to the Clerk of Court on or before **February 10, 2014**.

The SEC is **ORDERED** to file a status report with the Court on or before **February 12, 2014**, explaining whether Drapkin has complied with the present order. If needed, the Court will set a hearing to determine whether Drapkin has purged himself of contempt.

**IT IS FURTHER ORDERED** that in the event Drapkin fails to purge himself of contempt as herein ordered, the Court will issue an order for Ilya Drapkin's arrest and incarceration until such time as he purges himself of contempt as herein ordered, or by any other means the Court may direct.

**SO ORDERED** on this **10th day** of **January, 2014**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**